**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| OLIVER TRIANA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NAKED WHEY, INC. d/b/a NAKED NUTRITION,<br>Defendant. | Case No.<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Oliver Triana, by and through his counsel, files this Class Action Complaint and Demand for Jury Trial against Naked Whey, Inc. d/b/a Naked Nutrition ("Naked Nutrition" or "Defendant") on behalf of himself and on behalf of a Class of similarly situated individuals, and alleges, on personal knowledge as to his own actions, and on investigation of counsel as to all other matters, as follows:

## NATURE OF THE ACTION

1. This is a class action lawsuit brought on behalf of individuals who purchased Naked Nutrition Vegan Mass Gainer ("the Product").

2. Defendant manufactures and sells powdered protein and other health supplements at a premium price. Defendant's vegan protein powder, the Product, is touted as a clean, third-party tested, and nutritious protein source that is safe and appropriate for frequent consumption.

3. Recent independent testing revealed, however, that a single serving of the Product contains so much lead (a staggering 7.7 micrograms) that it exceeds a safe *weekly* threshold.[1]

---

[1] Martineau, Paris, *Protein Powders and Shakes Contain High Levels of Lead*, Consumer Reports, https://www.consumerreports.org/lead/protein-powders-and-shakes-contain-high-levels-of-lead-a4206364640/ (last visited Nov. 3, 2025).

4. Based on these testing results, nutrition experts cautioned against consuming the Product at all, let alone as a source of nutrition.[2]

5. Plaintiff brings this action on behalf of himself and a Class of similarly situated individuals who purchased the Product, thereby paying premium prices for a product that is marketed as healthy and safe for daily consumption but contains more than *fifteen times* the State of California's "maximum allowable dose level" for lead.[3]

6. Defendant's uniform conduct is equally applicable to Plaintiff and the Class. Plaintiff brings this class action against Defendant for violation of statutory consumer protection laws. Plaintiff seeks an order requiring Defendant to, among other things: (1) cease its false and misleading representations about the safety and fitness for consumption of its products; and (2) pay damages, restitution, and/or disgorgement to Plaintiff and Class members.

**PARTIES**

7. Plaintiff Oliver Triana is a natural person and a citizen of Texas, where he resides and intends to remain.

8. Defendant Naked Nutrition is a Florida Corporation with its principal place of business in Miami, Florida.

**JURISDICTION AND VENUE**

9. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), in that (1) the amount in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000; (2) Plaintiff is a citizen of Texas and Defendant is a citizen of Florida; and (3) this is a class action involving more than 100 class members and more than two-thirds of the class members reside in states other than the state in which Defendant is a citizen.

---

[2] *Id.*

[3] *See id.*

10. This Court has personal jurisdiction over Defendant because Defendant is a citizen of Florida, conducts substantial business in Florida, and a substantial portion of the acts complained of took place in Florida.

11. Venue is proper in the Southern District of Florida because Defendant's headquarters are located in this District, Defendant conducts business in this District and many of the events that gave rise to Plaintiff's claims occurred in this District.

**FACTUAL ALLEGATIONS**

12. Defendant Naked Nutrition manufactures and sells a range of nutrition products like protein powders and health supplements that are advertised as plant-based and nutritionally complete.

13. Defendant has curated its brand image to be a company that prioritizes healthy protein consumption through clean, simple ingredients.

14. Defendant markets its Vegan Mass Gainer Product as safe for consumption and especially encouraged for persons who are looking to gain weight and build muscle.[4]

15. The Product is advertised as a clean and complete source of vegan protein. Specifically, the Product label states, "ONLY THREE PREMIUM INGREDIENTS WITH NOTHING TO HIDE."[5]

---

[4] Naked Vegan Mass (product listing on Amazon.com), https://www.amazon.com/Naked-Vegan-Mass-Artificial-Ingredients/dp/B07XTQKYG1 (last visited Nov. 5, 2025).
[5] *Id.*







16. Various other advertisements of the product emphasize the purity of the Product, claiming that Defendant has "nothing to hide" regarding its contents.




17. To bolster perceptions about the safety of the Product, Defendant also includes numerous representations about independent testing and quality standards.

18. Specifically, Defendant represents[6] that the product is pure, tested for heavy metals, meets FDA safety reference levels, and that its quality can be trusted:

---

[6] *Id.*




**Testing Reveals High Levels of Lead in the Product,**
**Exceeding Weekly Recommended Doses**

19. In October 2025, Consumer Reports released a report of its independent testing of various protein powders, including the Product.

20. The Consumer Reports testing revealed that the Product contains concerning and potentially dangerous levels of lead.[7]

[7] Martineau, Paris, *Protein Powders and Shakes Contain High Levels of Lead*, Consumer Reports, https://www.consumerreports.org/lead/protein-powders-and-shakes-contain-high-levels-of-lead-a4206364640/ (last visited Nov. 3, 2025).

21. Specifically, testing concluded that "Naked Nutrition's Mass Gainer powder contained 7.7 micrograms of lead per serving, which is roughly 1,570 percent of CR's level of concern for the heavy metal."[8]

**The Harmful Effects of Lead Consumption**

22. Lead exposure can impact several body systems. Once absorbed by the body, lead is distributed throughout the brain, liver, kidneys, and bones. It interferes with biochemical processes by binding to enzymes, mimicking other important metals (such as calcium) in cells, and thereby disrupting cellular and nerve-cell functions.[9]

23. Lead remains in the body, stored in the teeth and bones where it accumulates over time. Lead stored in bone may be released into the blood during pregnancy and expose the fetus to the toxic metal.[10]

24. As a cumulative toxicant, lead affects multiple organ systems, including the neurological, hematological, gastrointestinal, cardiovascular, immune, and renal systems. Even small amounts of exposure can cause serious health problems.[11] At very high levels, lead poisoning can be fatal.[12] According to the World Health Organization, "[t]here is no known safe blood lead concentration."[13]

---

[8] *Id.*

[9] *What Are Possible Health Effects From Lead Exposure?*, Agency for Toxic Substances and Disease Registry, https://archive.cdc.gov/www_atsdr_cdc_gov/csem/leadtoxicity/physiological_effects.html (last reviewed May 24, 2023).

[10] *Lead Poisoning*, World Health Organization, (Sept. 27, 2024), https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health.

[11] *Lead Poisoning*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/lead-poisoning/symptoms-causes/syc-20354717 (last visited Nov. 3, 2025).

[12] *Id.*

[13] *Lead Poisoning*, World Health Organization, (Sept. 27, 2024), https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health.

25. In adults, lead exposure has been linked to increased blood pressure, cardiovascular disease, and kidney damage.[14] Low levels of exposure in children is associated with reduced IQ, attention-span problems and behavioral changes.[15] Young children absorb the toxicant more easily than adults, making their developing nervous systems more sensitive to its effects.[16] Because lead crosses the placenta, lead exposure during pregnancy can affect fetal growth, oftentimes causing low birth weight or pre-term birth.[17]

26. According to the U.S. Centers for Disease Control, "The effects of lead poisoning can be permanent and disabling."[18]

27. Contrary to Defendant's suggestion, the FDA sets reference levels for *total* daily lead consumption, not for specific products or single servings thereof. Contrary to Defendant's suggestion, it only provides reference levels for children and females of childbearing age, which are 2.2 and 8.8 micrograms per day, respectively.[19]

**Plaintiff's Purchases of Defendant's Product**

28. Plaintiff has purchased and consumed the Product, which through Defendant's representations and omissions he was led to believe was a safe supplement free from potentially harmful substances.

29. Plaintiff first purchased the Product from Amazon in or around 2023.

---

[14] *Id.*
[15] *Exposure To Lead: A Major Public Health Concern*, WHO (2021), https://www.who.int/publications/i/item/9789240037656.
[16] *Lead Poisoning*, World Health Organization (Sept. 27, 2024), https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health.
[17] *Id.*
[18] *About Childhood Lead Poisoning Prevention*, CDC (Aug. 21, 2025), https://www.cdc.gov/lead-prevention/about/index.html.
[19] *Updated interim reference levels for dietary lead to support FDA's Closer to Zero action plan* (Jun. 8, 2022), available at https://pubmed.ncbi.nlm.nih.gov/35690180/ (last visited Nov. 6, 2025).

30. Plaintiff most recently purchased the Product in March 2025.

31. Plaintiff consumed approximately two servings of the Product daily.

32. The presence or serious risk of exposure to heavy metals is material to customers when making their purchasing decisions.

33. Defendant materially misled its customers by misrepresenting the Product's safeness for frequent consumption, and by failing to disclose that its Product contained dangerous contaminants like lead in excess of safe levels. This omission deprived Plaintiff and other Class Members of the benefit of their bargain by causing them to pay a premium for a product that they otherwise would not have paid for had they been fully informed. If Plaintiff and other Class Members were aware of the unsafe levels of heavy metals found in Defendant's Product, they would have purchased less expensive, comparable protein powders that are available in the market.

**Defendant's Operations**

34. Defendant Naked Whey, Inc. is a Florida corporation whose business operations emanate from its headquarters in Miami, Florida.

35. Decisions regarding the formulation, testing, labeling, marketing, advertising, and sales of Defendant's products are made at and/or through its Miami headquarters. Defendant's presence in the market as well as the advertising to its customers are substantially connected to its operations in Florida.

36. Defendant does not have a presence in any other U.S. state matching the concentration of its presence in Florida.

## CLASS ALLEGATIONS

37. Plaintiff brings this class action under Federal Rule of Civil Procedure 23 and seeks certification of the claims and issues in this action pursuant to the applicable provisions of Rule 23. Plaintiff seeks certification of the following Class.

> All persons residing in the United States or its territories who purchased Defendant's Product at any time within the applicable limitations period.

38. Plaintiff reserves the right to amend or modify the Class definitions with greater specificity or to add or modify subclasses after having had an opportunity to conduct discovery.

39. Numerosity. Fed. R. Civ. P. 23(a)(1). Defendant reports having more than 179,000 customers. At a minimum, there are tens of thousands of Class Members but very likely many more. The exact size of the proposed class can be ascertained from Defendant's records and those of the retailers that sell the Product.

40. Commonality. Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the class, which questions predominate over any questions affecting only individual class members. Common issues include but are not limited to:

a. Whether Defendant's marketing, advertising, labeling, and other representations regarding the Product were misleading and/or deceptive;

b. Whether Defendant's conduct is deceptive in violation of FDUDPA;

c. The nature of the relief, including equitable relief, to which Plaintiff and the class are entitled; and

d. Whether Plaintiff and Class Members are entitled to reasonable attorneys' fees and costs.

41. Typicality. Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of the claims of the Class(es) he seeks to represent. Plaintiff and all Class members were exposed to uniform practices and sustained injuries arising out of and caused by Defendant's unlawful conduct.

42. Adequacy of Representation. Fed. R. Civ. P. 23(a)(4). Plaintiff will fairly and adequately represent and protect the interests of the members of the Class(es). Further, Plaintiff

has retained counsel with extensive experience litigating complex class actions. Plaintiff's counsel has been appointed by state and federal courts to represent certified classes in dozens of cases.

43. Superiority. Fed. R. Civ. P. 23(b)(3). A class action is superior to any other available means for the fair and efficient adjudication of this controversy. The claims of Plaintiff and individual class members are small compared to the burden and expense that would be required to separately litigate their claims against Defendant, and it would be impracticable for class members to seek redress individually. Litigating claims individually would also be wasteful to the resources of the parties and the judicial system and create the possibility of inconsistent or contradictory judgments. Class treatment provides manageable judicial treatment which will bring an orderly and efficient conclusion to all claims arising from Defendant's misconduct. Class certification is therefore appropriate under Rule 23(b)(3).

44. Class certification is also appropriate under Rule 23(b)(1), as the prosecution of separate actions by individual members of the class would create the risk of adjudications with respect to individual class members that would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication and substantially impair their ability to protect those interests.

45. Class certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2), as Defendant has acted or refused to act on grounds generally applicable to the class, thereby making final injunctive relief or corresponding declaratory relief appropriate for the class.

## FIRST CAUSE OF ACTION

### VIOLATIONS OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FDUTPA) FLA. STAT §§ 501.201, *et seq.*

**On behalf of Plaintiff and the Class**

46. Plaintiff incorporates all preceding factual allegations as if fully set forth herein.

47. Pursuant to Fla. Stat. § 501.204(1), FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

48. The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

49. At all times relevant herein, Defendant solicited, advertised, offered, provided and distributed goods in the State of Florida, and thereby was engaged in trade or commerce pursuant to Fla. Stat. § 501.203(8).

50. Plaintiff and other members of the Class are consumers pursuant to Fla. Stat. § 501.203(7).

51. Defendant engaged in unfair and deceptive acts in violation of FDUTPA, by making materially misleading statements and omissions regarding the health and safety of the Product, which prevent Plaintiff and the Class from learning that Defendant's Product contained dangerous heavy metals like lead.

52. Defendant's acts and omissions caused Plaintiff and the Class to reasonably believe that they were purchasing for consumption a product that was healthy and safe. Plaintiff and the Class reasonably relied on Defendant's material representations and omissions when purchasing the Product. Defendant failed to disclose or intentionally concealed the presence or risk of harmful contaminants in the Product, including lead, which would have been a material consideration of Plaintiff and the Class's purchasing decisions.

53. Defendant's deceptive acts and omissions deprived Plaintiff and the Class of the benefit of their bargain. By failing to disclose or intentionally concealing the presence or risk of heavy metals in the Product, Defendant caused Plaintiff and the Class to pay a premium for a purportedly safe and nutritious product.

54. Defendant knew or should have known that its material representations and omissions regarding the safety of the Product were false or misleading, yet caused such representations to be promoted and distributed throughout Florida and nationwide through advertising, marketing, and other promotional channels.

55. Defendant's deceptive acts and omissions directly and proximately caused Plaintiff and other Class Members to suffer an ascertainable loss. Plaintiff would not have purchased, and at a minimum would not have paid the same price for, Defendant's Product had Defendant disclosed the risk and/or presence of dangerous contaminants in its Product.

56. Comparable and less expensive products similar to those of Defendant's without excessive heavy metal content are widely available, and Plaintiff and other Class Member could have purchased those alternatives had they been informed of the dangerous heavy metals present in Defendant's Product.

57. Plaintiff seeks all damages available under the law, including but not limited to monetary, statutory damages, compensatory, treble and punitive damages, restitution, and disgorgement of all monies obtained as a result of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

58. Defendant's conduct also caused substantial injury to the public, who relied on Defendant's representations that the Product was nutritious, clean, and safe for daily use and was unaware of Defendant's material omissions. Defendant's failure to disclose that the Product

contained toxic heavy metals deprived consumers of the ability to make an informed decision whether to purchase and thereby ingest the Product. Aside from the economic harm this caused, the trust of the public in products that claim to be nutritious, healthy, and safe for everyday use is compromised. Defendant's conduct must be enjoined so as to not cause further irreparable harm and risk of further injury.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, on behalf of themselves and the classes of similarly situated individuals, request the Court to:

(a) Certify the case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, designate Plaintiff as representative of the class(es) and appoint his counsel as Class Counsel;

(b) Order Defendant to provide actual damages and equitable monetary relief (including restitution) to Plaintiff and class members and/or order Defendant to disgorge profits they realized as a result of their unlawful conduct;

(c) Order Defendant to pay punitive damages, as allowable by law, to Plaintiff and class members;

(d) Order Defendant to pay statutory damages, as allowable by the statutes asserted herein, to Plaintiff and class members;

(e) Declare Defendant conduct unlawful and enter an order enjoining Defendant from continuing to engage in the conduct alleged herein;

(f) Award both pre- and post-judgment interest at the maximum allowable rate on any amounts awarded;

(g) Award costs of the proceedings herein;

(h) Award reasonable attorneys' fees as allowed by law; and

(i) Award such other relief as the Court deems appropriate under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury on issues so triable.

DATED: November 7, 2025

Respectfully submitted,

*/s/ Andrew Shamis*
Andrew J. Shamis
Florida Bar No. 101754
**SHAMIS & GENTILE, P.A**.
ashamis@shamisgentile.com
14 NE 1st Ave., Suite 705
Miami, Florida 33132
Telephone: 305-479-2299

**COULSON P.C.**
NICHOLAS A. COULSON
(*pro hac vice to be submitted*)
300 River Place Drive
Suite 1700
Detroit, Michigan 48207
T: (313) 644-2685
Nick@CoulsonPC.com

*Attorneys for Plaintiff and*
*the Putative Class*